■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALEXANDER HALL, Appellant. [926 NYS2d 514]—

At about 3:30 A.M. on the morning of October 12, 2005, defendant and three of his friends, after spending the night drinking at a club, were involved in an altercation with a club promoter, which ended with the arrival of police. As they walked to their cars, one of defendant's friends was hit on the head with a broken bottle, sustaining a cut. Records of cell tower transmissions disclosed that defendant and one companion first drove south toward his apartment but, at 4:02 A.M., headed back north toward the club. At 4:08 A.M., calls placed from both men's phones were relayed from a cell tower located to the north of the club. Defendant's call was received by one of his friends riding in the other car, who related that defendant had stated that he was on his way back to the club.

At about 4:10 A.M., defendant opened fire on a group of club patrons who had just left the club and remained in front of the establishment after its 4:00 A.M. closing time. One bullet struck Tabitha Perez, the mother of a seven-year-old boy, piercing her lung and causing her death. Another round struck Ruben Batista, a homeless man, in the leg, shattering a bone. A third victim, Jeremy Soto, was injured by a bullet that passed through his calf and another that grazed his finger. The parties stipulated that a call was made to 911 at 4:11 A.M., and cell phone records revealed that a call made from defendant's phone at 4:13

A.M. was handled by a cell tower at 179th Street, just north of the club, located between 176th and 177th Streets. Defendant was identified as the shooter at a lineup by a witness who had described him as young, with dark hair and a light complexion, dark eyes and distinctive, arched eyebrows.

Some nine months later, as the result of an unrelated narcotics investigation, police arrested defendant's traveling companion on the night of the shootings, recovering a .357 magnum revolver. While the condition of the bullets that struck the victims did not permit them to be matched to the gun, a ballistics expert testified that the weapon was capable of firing those rounds.

Defendant was indicted for murder in the second degree for causing the death of Tabitha Perez, assault in the first degree for causing serious physical injury to Jeremy Soto, assault in the first degree for causing serious physical injury to Ruben Batista, and criminal possession of a weapon in the second degree for possessing a loaded pistol with intent to use it unlawfully against another, all on or about October 12, 2005. The murder and assault counts alleged that defendant had acted with depraved indifference to human life.

The jury acquitted defendant of murder in the second degree but found him guilty of manslaughter in the second degree. Similarly, the jury acquitted defendant of both counts of assault in the first degree but found him guilty of assault in the third degree. The jury found defendant guilty of criminal possession of a weapon in the second degree.

The court properly denied defendant's motion to suppress historical cell site location information (CSLI) for calls made over his cell phone during the three-day period surrounding the shootings. These records were obtained by court order under 18 USC § 2703 (d), which does not require that the People establish probable cause or obtain a warrant. Even if a cell phone could be considered a "tracking device" under 18 USC § 3117 (b) to the extent that it permits the tracking of movement, the People are not thereby precluded from obtaining CSLI records pursuant to section 2703 (*see In re Application of US for Order Directing Provider of Elec. Communication Serv. to Disclose Records to Govt.*, 620 F3d 304, 308-310 [3d Cir 2010]; *In re Applications of US for Orders Pursuant to Title 18, US Code Section 2703 [d]*, 509 F Supp 2d 76, 79-80, 80 n 8 [D Mass 2007]).

Obtaining defendant's CSLI without a warrant did not violate the Fourth Amendment because, under the Federal Constitution, defendant had no reasonable expectation of privacy while traveling in public (*see e.g. United States v Knotts*, 460 US 276, 281 [1983]; *In re Application*, 620 F3d at 312). Defendant's

argument for suppression under the New York State Constitution (*see People v Weaver*, 12 NY3d 433, 445 [2009]) is unpreserved (*see e.g. People v Garcia*, 284 AD2d 106, 108 [2001], *lv denied* 97 NY2d 641 [2001]), and we decline to review it in the interest of justice. As an alternative holding, we reject it on the merits. Although *Weaver* requires the police to obtain a warrant supported by probable cause for the installation of a global positioning system device, it does not address the matter of CSLI records. Additionally, in *Weaver* the device was used to track the defendant's movements for 65 days, as opposed to a mere three days in the instant case. To the extent that prolonged surveillance might require a warrant under federal law (*see United States v Maynard*, 615 F3d 544 [DC Cir 2010], *cert denied* 562 US —, 131 S Ct 671 [2010]), we find that three days of CSLI records does not constitute a protracted surveillance.

The verdict was not against the weight of the evidence (*see People v Danielson*, 9 NY3d 342, 348-349 [2007]). On the contrary, the evidence of defendant's guilt was overwhelming. There is no basis for disturbing the jury's determinations concerning credibility and identification. The People's case included an eyewitness's identification, defendant's confession to two civilians, his partly incriminating statements to police, and compelling circumstantial evidence.

Since there was extensive evidence connecting defendant to the crime besides the identification, the trial court properly exercised its discretion in denying defendant's request to call an expert on eyewitness identification (*see People v Abney*, 13 NY3d 251, 269 [2009]). The trial court properly exercised its discretion in admitting computer-generated evidence and denying defendant's request to permit the jury to visit the crime scene. Defendant's challenge to the court's charge is unpreserved, and we decline to review it in the interest of justice. As an alternative holding, we reject it on the merits. In any event, any error in regard to the court's discretionary determinations and its jury charge was harmless in light of the overwhelming evidence of guilt (*see People v Crimmins*, 36 NY2d 230 [1975]).

We find the sentence not excessive under the circumstances of this case. Concur—Gonzalez, P.J., Tom, Andrias, Moskowitz and Freedman, JJ.