[35 NE3d 840, 14 NYS3d 770]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM HENDERSON, Appellant.

Argued June 1, 2015; decided June 30, 2015

## POINTS OF COUNSEL

*The Abbatoy Law Firm, PLLC,* Rochester (*David M. Abbatoy, Jr.,* of counsel), for appellant. I. There was insufficient evidence of felony murder. (*People v Cahill,* 2 NY3d 14; *People v Miller,* 32 NY2d 157; *People v Wood,* 8 NY2d 48; *People v Hernandez,* 82 NY2d 309; *People v Bornholdt,* 33 NY2d 75; *People v Joyner,* 26 NY2d 106; *People v Gladman,* 41 NY2d 123; *People v Arroyo,* 93 NY2d 990; *People v Heath,* 203 AD2d 17; *People v Versaggi,* 83 NY2d 123.) II. The lower court erred by refusing to charge the lesser-included offense of manslaughter in the second degree. (*People v Butler,* 84 NY2d 627; *People v Stanford,* 87 AD3d 1367; *People v Lopez,* 72 AD3d 593; *People v Sussman,* 298 AD2d 205; *People v Rivera,* 23 NY3d 112; *People v Green,* 56 NY2d 427; *People v Glover,* 57 NY2d 61; *People v Evans,* 232 AD2d 275; *People v Dinser,* 192 NY 80; *Morissette v United States,* 342 US 246.) III. The lower court erred by refusing to grant a missing witness charge. (*People v Gonzalez,* 68 NY2d 424; *People v Kitching,* 78 NY2d 532; *People v Macana,* 84 NY2d 173; *People v Erts,* 73 NY2d 872; *People v Concepcion,* 17 NY3d 192; *People v LaFontaine,* 92 NY2d 470; *People v Grimes,* 289 AD2d 1072; *State of New York v Skibinski,* 87 AD2d 974; *Hoffman v United States,* 341 US 479; *Southbridge Finishing Co. v Golding,* 2 AD2d 882.)

*Kathleen B. Hogan, District Attorney,* Lake George (*Jason M. Carusone* and *Emilee B. Davenport* of counsel), for respondent. I. The trial evidence permitted the jury to conclude the defendant committed felony murder and that the People proved each element of that crime beyond a reasonable doubt. As such, the Appellate Division properly found that the defendant's conviction is supported by legally sufficient evidence. (*People v Bleakley,* 69 NY2d 490; *People v Miller,* 32 NY2d 157; *People v Ca-*

*hill*, 2 NY3d 14; *People v Wood*, 8 NY2d 48; *People v Hernandez*, 82 NY2d 309.) II. The defendant was not entitled to an instruction on manslaughter in the second degree as a lesser included offense of manslaughter in the first degree, because there was no reasonable view of the evidence that would have supported a finding that the defendant recklessly killed Chambers. (*People v Rivera*, 23 NY3d 112; *People v Glover*, 57 NY2d 61; *People v Martin*, 59 NY2d 704; *People v Green*, 56 NY2d 427; *People v Scarborough*, 49 NY2d 364; *People v Asan*, 22 NY2d 526; *People v Discala*, 45 NY2d 38; *People v Negron*, 91 NY2d 788; *People v Tai*, 39 NY2d 894; *People v Evans*, 232 AD2d 275.) III. The County Court properly denied the defendant's request for a missing witness charge with respect to Mathes, the defendant's cousin, since Mathes was not under the People's control, and if any error occurred such error was necessarily harmless as a result of the overwhelming evidence presented at trial of the defendant's guilt. (*People v Gonzalez*, 68 NY2d 424; *People v Sharp*, 107 NY 427; *People v Griffin*, 100 AD2d 659; *People v Williams*, 34 AD2d 1046; *Reehil v Fraas*, 129 App Div 563; *People v Dillard*, 96 AD2d 112; *People v Douglas*, 54 AD2d 515; *People v Moore*, 17 AD2d 57; *People v Rodriguez*, 38 NY2d 95; *People v Brown*, 34 NY2d 658.)

## OPINION OF THE COURT

Abdus-Salaam, J.

The primary issue presented on this appeal is whether there was sufficient proof to support defendant's conviction for felony murder, based upon the underlying predicate felony of burglary. Because legally sufficient evidence exists, the order of the Appellate Division should be affirmed.

## I

Defendant William Henderson, his cousin and a friend broke into an apartment looking for two individuals who the men suspected had robbed them of drugs and money that were kept in an associate's nearby apartment. When defendant broke down the door to the apartment, the suspected thieves were not inside. Rather, the victim and his girlfriend were in an upstairs bedroom. When the victim heard the downstairs door being kicked in, he opened the door to the bedroom and saw the men coming up the stairs. Defendant was screaming and asking for the whereabouts of the individuals he believed had stolen the drugs. The victim told defendant to leave. Defendant then punched the victim in the face and a fistfight ensued. The

victim's girlfriend hit defendant over the head with a bottle. At some point, she heard sirens and stated that the police were coming. Defendant and the other men ran out of the apartment, returning to their associate's apartment.

Defendant took a knife out of the knife block in his associate's kitchen, telling his associate that he was "going to kill him," presumably referring to the victim. Defendant returned to the victim's apartment holding the knife in his hand. The victim told his girlfriend to run, and she ran out of the back door to a neighbor's apartment and called 911. As she ran out of the apartment, she heard glass shattering. A bottle had apparently been broken over the victim's head. The victim's girlfriend then ran back to the apartment and saw the victim exit the door and slump down on the stoop with shards of glass protruding from his scalp and blood pouring from his back. The victim told his girlfriend that he thought he had been stabbed, and he thereafter lost consciousness. Defendant fled the apartment, got into a vehicle with his friend and sped off just as the police arrived. After the police pursued the vehicle, defendant and his friend were arrested. Defendant's cousin, who was still in the associate's apartment when defendant stabbed the victim, was also arrested. EMTs tried but failed to resuscitate the victim, and he was pronounced dead.

Defendant was indicted for murder in the second degree (Penal Law § 125.25 [1] [intentional murder]), murder in the second degree (Penal Law § 125.25 [3] [felony murder]), assault in the second degree (Penal Law § 120.05 [1] [intentional assault]), assault in the second degree (Penal Law § 120.05 [6] [felony assault]), burglary in the first degree (Penal Law § 140.30 [2]), burglary in the second degree (Penal Law § 140.25 [1] [b] [burglary resulting in physical injury]), and burglary in the second degree (Penal Law § 140.25 [2] [burglarizing a dwelling]).* During trial, the associate testified for the People, stating that defendant, defendant's cousin and their friend had

---

* During defendant's original trial, defendant testified on his own behalf. Prior to deliberations, County Court granted defendant's request to instruct the jury on manslaughter in the first degree (Penal Law § 125.20 [1]) as a lesser included offense of murder in the second degree (Penal Law § 125.25 [1] [intentional murder]). Defendant was convicted upon a jury verdict of manslaughter in the first degree, but acquitted of intentional murder. Additionally, he was convicted of the remaining counts. Defendant appealed, and the Appellate Division reversed the judgment and remitted to County Court for a new trial (*People v Henderson*, 74 AD3d 1567 [3d Dept 2010]). The Court determined that "County Court committed reversible error in

left her apartment for a period of time, and when they returned, defendant appeared upset, was "pacing back and forth . . . and then . . . took a kitchen knife." She heard defendant say that he was "going to kill him." The associate asked defendant to put the knife back, but he did not comply. The victim's girlfriend also testified for the People. She stated that defendant and other men broke into the apartment and described the ensuing fight between defendant and the victim. She testified that the victim told her that he had been stabbed. The medical examiner who conducted the victim's autopsy also testified for the People. He concluded that the victim's cause of death was a hemorrhage as a result of a stab wound to his left back which perforated his aorta.

Defendant did not testify; however, his testimony from his first trial was read into the record. In that statement, defendant testified that while he was going to his associate's apartment, the victim made a racial slur and threw a bottle at him. He admitted to breaking into the victim's apartment, fighting with him, and returning with a knife. Defendant testified that he did not intend to kill the victim, but he "wanted to hurt him like he hurt me with the bottle."

Defendant was convicted of felony murder, first-degree manslaughter, first-degree burglary, two counts of second-degree burglary, and second-degree assault. On appeal, the Appellate Division rejected defendant's argument that "the evidence of felony murder [wa]s legally insufficient because the predicate burglary is based upon his conceded intent to commit an assault" (110 AD3d 1353, 1354 [3d Dept 2013]). The Court affirmed, holding that defendant's felony murder conviction "may properly be based on a burglary as the predicate felony where the intent at the time of entry is to commit an assault" (*id.* at 1354). A Judge of this Court granted defendant leave to appeal (*see* 23 NY3d 963 [2014]), and we now affirm.

## II

There is legally sufficient evidence in this record to support defendant's conviction for felony murder.

---

dismissing a sworn juror over [defendant's] objections" (*id.* at 1570). Thereafter the Appellate Division granted the People's request to seek an indictment on the originally unindicted count of first degree manslaughter (*People v Henderson*, 77 AD3d 1168 [3d Dept 2010]). A second indictment was then filed, charging defendant with first degree manslaughter. County Court granted the People's motion to consolidate the indictments.

Penal Law § 125.25 (3) provides that a person is guilty of murder in the second degree if he or she commits or attempts to commit one of 10 enumerated felonies, "and, in the course of and in furtherance of such crime . . . causes the death of [another]." The felony murder statute includes, in its list of predicate felonies, the crime of burglary. To establish the crime of burglary, it must be shown that the defendant "knowingly enters or remains unlawfully in a building with intent to commit a crime therein" (Penal Law § 140.20).

Defendant presently argues that the evidence adduced at trial demonstrates that the second time he entered the victim's apartment, he did so with the intent to kill. As support, defendant relies on his associate's testimony that after he took the knife, he stated he was "going to kill" the victim. He asserts that a felony murder conviction cannot be predicated on burglary when the intended crime underlying the burglary is murder, because to do so would double-count a single mens rea of intent to kill. There was evidence at trial, however, that defendant's intent when he reentered the victim's apartment was to commit assault, not kill the victim. Defendant testified that he initially retrieved the knife because "[he] was mad [he] got assaulted" by the victim "and [he] wanted to even the odds." He admitted that upon his reentry, he immediately began to fight with the victim. He denied returning to the apartment to kill the victim, but admitted he intended to "hurt" him. Defendant stabbed the victim only after the victim "swung" at him. Although defendant told his associate that he wanted to kill the victim, viewing the evidence, as we must, in the light most favorable to the People (see People v Delamota, 18 NY3d 107, 113 [2011]; People v Conway, 6 NY3d 869, 872 [2006]), a rational trier of fact could conclude that, based upon defendant's own statements, defendant committed the crime of burglary when he entered the apartment with the intent to assault the victim and during that burglary defendant caused the victim's death.

We now consider the question of whether there was legally sufficient evidence of felony murder. We conclude legally sufficient evidence exists here. As we held in People v Miller (32 NY2d 157 [1973]), a felony murder conviction may be predicated upon the commission of a burglary where the defendant's underlying intent is to assault the victim. In that case, the defendant broke into an apartment intending to assault one of

the occupants, Fennell. The defendant entered the apartment and stabbed Fennell in the arm while spraying a chemical in Fennell's face. Aleem, Fennell's roommate, came to Fennell's aid, and the defendant killed Aleem by stabbing him in the chest. This Court held that a felony murder charge predicated on burglary was sufficient for conviction of felony murder on those facts, despite the defendant's argument that the intent to commit assault underlying the burglary merged with the homicide (*id.* at 159).

Noting the legislature's inclusion of burglary of all degrees, without qualification, as a predicate felony for felony murder, we observed

> "that persons within domiciles are in greater peril from those entering the domicile with criminal intent, than persons on the street who are being subjected to the same criminal intent. Thus, the burglary statutes prescribe greater punishment for a criminal act committed within the domicile than for the same act committed on the street" (*id.* at 160).

It is clear that the legislature chose to treat burglary differently than other crimes. Therefore, an individual who approaches another on the street with an intent to assault but causes the death of that person could be convicted of manslaughter, but not felony murder. It is entirely reasonable, however, that a person—like defendant—who unlawfully enters a building with the intent to commit an assault therein, but causes the death of another, may be convicted of felony murder, in recognition that the homicide occurs in the context of other criminal activity that enhances the seriousness of the offense.

Although *Miller* involved two victims, our rationale in *Miller* is applicable here. The defendant's intent in *Miller* to assault one victim when unlawfully entering the apartment, combined with the murder that resulted in the course of and in furtherance of the burglary, was sufficient to support a felony murder conviction. This Court's holding in *Miller* was not limited to circumstances where a defendant killed a victim other than the one he or she intended to harm. Here, defendant unlawfully entered the victim's apartment with the singular intent to assault him, but caused his death. Defendant's felony murder conviction, therefore, is supported by legally sufficient evidence.

Although defendant urges this Court to answer a question we expressly left open in *People v Cahill* (2 NY3d 14 [2003]), this case does not present us with an occasion to do so. In *People v Cahill*, involving the capital murder statute, we did not address whether a person who enters a building with the intent to kill may properly be convicted of felony murder. Likewise, we need not answer that question here because there is sufficient evidence from which a rational jury could conclude that defendant entered the victim's apartment with the sole intent to commit assault. Furthermore, in *Cahill* this Court repeatedly explained that the holding in that case was consistent with, and had no impact on, the holding of *Miller*.

Defendant also argues that his felony murder conviction rests on legally insufficient evidence because there is no evidence that he committed the murder "in furtherance of" a burglary. He asserts that the statutory language "in furtherance of" requires that the death be caused in order to advance or promote the underlying felony. We have not interpreted "in furtherance of" so narrowly. The felony murder statute is intended to punish a perpetrator for a death he or she caused during the commission of a felony, but not a death that is coincidental to the felony (*see People v Hernandez*, 82 NY2d 309, 317 [1993]). The "in furtherance of" element requires "a logical nexus between a murder and a felony" (*Cahill*, 2 NY3d at 101-102 [Graffeo, J., concurring in part and dissenting in part], citing *People v Lewis*, 111 Misc 2d 682 [Sup Ct, NY County 1981]). Here, there is a clear logical nexus between defendant's felony of unlawfully entering the victim's apartment to assault him and the homicide, which was certainly not coincidental. Limiting the "in furtherance of" element to murders that promote or advance the felony, as defendant suggests, would exclude from felony murder a large class of murders. Given that the purpose of the felony murder statute was to broaden liability for deaths that occur during the commission of certain enumerated felonies, the legislature could not have possibly intended such a result (*see Cahill*, 2 NY3d at 66-68). Thus, defendant's conviction for felony murder is based upon legally sufficient evidence.

### III

Defendant's remaining contentions do not warrant reversal. Accordingly, the order of the Appellate Division should be affirmed.

542

Chief Judge LIPPMAN and Judges READ, PIGOTT, RIVERA, STEIN and FAHEY concur.

Order affirmed.