*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  December 3, 2015                    105435
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                      Respondent,

            v                                   MEMORANDUM AND ORDER

SCOTT CHAPLIN,
                      Appellant.
_____


Calendar Date:   October 23, 2015

Before:  McCarthy, J.P., Egan Jr., Lynch and Devine, JJ.


_____


        Theresa M. Suozzi, Saratoga Springs, for appellant.

        Thomas J. O'Connor, Special Prosecutor, Albany, for
respondent.


_____


McCarthy, J.P.

        Appeal from a judgment of the County Court of Rensselaer
County (Ceresia, J.), rendered September 10, 2012, upon a verdict
convicting defendant of the crime of murder in the second degree.

        On a morning in March 1994, the victim was found bludgeoned
to death at her place of employment, inside of a staff apartment
of a residence for the developmentally disabled.  Interviews with
the victim's family members indicated that defendant, who was 17
years old at the time, had been sexually involved with the
victim.  Shortly thereafter, defendant made various statements to
the police denying any involvement in the homicide.  In 2004, DNA
analysis of evidence obtained from the crime scene revealed that
saliva left on a paper towel roll matched defendant's DNA
profile.  In April 2011, additional DNA analysis revealed that

defendant could not be excluded as a contributor to the DNA obtained from a piece of paper towel that had been wrapped around the bedroom doorknob of the staff apartment. In May 2011, a witness was located who implicated defendant and a codefendant in the victim's murder and robbery. After grand jury indictment and then a jury trial, defendant was convicted of murder in the second degree and sentenced to 25 years to life in prison. Defendant appeals, and we affirm.

Defendant's contention that his constitutional right to a speedy trial was violated is without merit. "In determining whether there is an undue delay, the trial court must consider '(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay'" (People v Montague, 130 AD3d 1100, 1101 [2015], quoting People v Taranovich, 37 NY2d 442, 445 [1975]). Where, as here, the delay is extraordinary, "close scrutiny of the other factors, especially the question of why the delay occurred," is required (People v Romeo, 12 NY3d 51, 56 [2009], cert denied 558 US 817 [2009]).

The People introduced evidence indicating that DNA technology in 1994 would have required the destruction of the two samples of biological material that had been collected. Further evidence established that technology at the time that the samples were tested — in 2004 and 2011 — did not require such destruction. In addition to this physical evidence becoming probative, a witness came forward in May 2011 implicating defendant in the murder. Such evidence demonstrated a good faith basis for the delay in proceeding with the prosecution (see People v Decker, 13 NY3d 12, 16 [2009]; People v Gaston, 104 AD3d 1206, 1206-1207 [2013], lv denied 22 NY3d 1156 [2014]).

Turning to the remaining factors, the charge of murder in the second degree is "inarguably a very serious offense" (People v Decker, 13 NY3d at 15). Further, defendant was never incarcerated during the 17-year delay (see People v Swan, 90 AD3d 1146, 1147 [2011]). In addition, defendant's generic claim that witnesses may have moved and that their recall of events is no

longer as strong as it once was is too speculative to carry significant weight in the analysis (see People v King, 62 AD3d 1162, 1163 [2009]).  Although defendant faced a substantial delay, upon considering these factors, we find that his constitutional right to a speedy trial was not violated (see People v Vernace, 96 NY2d 886, 888 [2001]; People v Tuper, 118 AD3d 1144, 1146 [2014], lv denied 25 NY3d 954 [2015]; People v Chatt, 77 AD3d 1285, 1285 [2010], lvs denied 17 NY3d 793, 800 [2011]).

The introduction of certain statements made by defendant to law enforcement officials did not violate his constitutional rights.  Miranda safeguards "are not triggered unless a suspect is subject to 'custodial interrogation'" (People v Berg, 92 NY2d 701, 704 [1999], quoting Miranda v Arizona, 384 US 436, 444 [1966]).  "The standard for assessing a suspect's custodial status is whether a reasonable person innocent of any wrongdoing would have believed that he or she was not free to leave" (People v Paulman, 5 NY3d 122, 129 [2005] [citations omitted]).  This inquiry is informed by many factors, including "'the location, length and atmosphere of the questioning, whether police significantly restricted defendant's freedom of action, the degree of defendant's cooperation, and whether the questioning was accusatory or investigatory'" (People v Henry, 114 AD3d 1025, 1026 [2014], lv dismissed 22 NY3d 1199 [2014], quoting People v Pagan, 97 AD3d 963, 966 [2012], lv denied 20 NY3d 934 [2012]).

Defendant's first interview with police took place at his home, in the presence of defendant's father, and it lasted approximately 20 to 30 minutes.  The evidence indicates that defendant's movements were not restrained and that he could have ended the interview at any time.  Defendant's second interview took place over a 90-minute period after defendant and his father spontaneously and voluntarily appeared at a police station.  According to an interviewing police officer, defendant informed him that he wanted to "clear the air."  Defendant's third and final interview — which included a polygraph examination and occurred in 2011 — took place upon defendant's request.  Further uncontested evidence established that defense counsel conducted substantial negotiations regarding the conditions upon which defendant would participate in such an interview.  The interview

took place over 3½ hours, after which defendant left. Considering the totality of circumstances surrounding each of the aforementioned interviews, none of defendant's statements was made while he was in custody (see People v Mercado, 113 AD3d 930, 931-932 [2014], lv denied 23 NY3d 1040 [2014]; People v Bennett, 179 AD2d 837, 838-839 [1992]). Relatedly, defendant had no right to have counsel present during the third interview, given that it was noncustodial and no criminal action against defendant had been commenced (see People v Lopez, 16 NY3d 375, 380 [2011]). Accordingly, defendant's suppression arguments are without merit.

Defendant's conviction was based on legally sufficient evidence, and it was not against the weight of the evidence. As relevant here, to convict defendant of murder in the second degree on a felony murder theory, the People were required to prove that defendant committed or attempted to commit a robbery "and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there [were] any, cause[d] the death of" the victim (Penal Law § 125.25 [3]; see People v Henderson, 25 NY3d 534, 539 [2015]; People v Jackson, 100 AD3d 1258, 1259 [2012], lv denied 21 NY3d 1005 [2013]). Proof of defendant's intent to murder the victim was not necessary; rather, the People were required to show that defendant specifically intended to commit the predicate felony (see People v Stokes, 88 NY2d 618, 623 [1996]). To establish that defendant committed a robbery, the People were required to show that defendant forcibly stole property from the victim for the purpose of retaining the same (see Penal Law § 160.00). Notably, intent to commit a robbery may be inferred from defendant's conduct and the surrounding circumstances (see People v Gordon, 23 NY3d 643, 650 [2014]).

Proof implicating defendant included the introduction of DNA evidence relating to two samples of DNA, which, when considered together, strongly indicated that defendant had been at the scene of the murder on the night in question. This DNA evidence, along with other overwhelming evidence confirming that defendant had a romantic relationship with the victim, could be considered evidence of defendant's consciousness of guilt, as it utterly contradicted defendant's prior repeated claims that he had not had any relationship with the victim. Testimony also

indicated that the victim generally carried a purse with large sums of cash and that such purse was not with the victim after her death. An individual who was defendant's neighbor and friend in 1994 testified that defendant explained to him, shortly after the victim's death, that the police would not find the victim's purse and that witnesses were incorrect in their belief that a certain car had been at the scene of the crime. That same witness explained that defendant, prior to the victim's death, had also told him that the victim had a significant amount of money.

Contrary to defendant's contention, the People were not required to prove the value of the contents of the victim's purse (see People v Acevedo, 40 NY2d 701, 707 [1976]). The aforementioned evidence was sufficient to support defendant's conviction of murder in the second degree on a felony murder theory (see People v Ramos, 129 AD3d 1205, 1206-1207 [2015], lv denied 26 NY3d 971 [2015]; People v Griffin, 122 AD3d 1068, 1069-1070 [2014], lv denied 25 NY3d 1164 [2015]).[1] Further, deferring to the jury's resolution of credibility issues, the conviction was not against the weight of the evidence (see People v Callicut, 101 AD3d 1256, 1257-1259 [2012], lvs denied 20 NY3d 1096, 1097 [2013]; People v Jackson, 100 AD3d at 1259-1261).

Defendant's contention that the People should not have elicited testimony that defendant committed the bad acts of buying and smoking marihuana is unpreserved (see People v Cox, 129 AD3d 1210, 1214 [2015], lv denied 26 NY3d 966 [2015]) and does not warrant any corrective action in the interest of justice. Contrary to certain of defendant's contentions regarding the best evidence rule, defendant's written statements to law enforcement were not introduced as photographs or photocopies. The writings that were introduced were carbon copies, which are originals for the purposes of the best evidence rule (see People v Sims, 127 AD2d 712, 713 [1987]; People v Kolp, 49 AD2d 139, 141 [1975]). Defendant's remaining argument regarding the best evidence rule is also without merit, as the

_____

[1] Defendant does not contest the jury's conclusion that the predicate murder occurred.

writing that it regards was not entered into evidence.

Defendant's assertions that Brady materials were improperly withheld from him is without support in the record, and his speculation that such evidence exists is insufficient to establish a Brady violation (see People v Parkinson, 268 AD2d 792, 793 [2000], lv denied 95 NY2d 801 [2000]). In addition, given that defendant supplied the language that County Court used in its circumstantial evidence charge to the jury, his current contention that such a charge was improper is unpreserved (see People v Sabines, 121 AD3d 1409, 1411-1412 [2014], lv denied 25 NY3d 1171 [2015]; People v Davis, 105 AD3d 1095, 1097 [2013], lv denied 21 NY3d 1003 [2013]). In any event and contrary to defendant's contention, County Court was not required to use the phrase "moral certainty" in its circumstantial evidence charge (People v Sanchez, 61 NY2d 1022, 1024 [1984]; see People v Gonzalez, 54 NY2d 729, 730 [1981]). To the extent not already discussed herein, defendant's remaining contentions are without merit.

Egan Jr., Lynch and Devine, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court