People v Taylor (2018 NY Slip Op 00709)





People v Taylor


2018 NY Slip Op 00709


Decided on February 2, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 2, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CARNI, J.P., LINDLEY, NEMOYER, CURRAN, AND TROUTMAN, JJ.


1058 KA 15-00214

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
DANTE TAYLOR, DEFENDANT-APPELLANT. 






THE ABBATOY LAW FIRM, PLLC, ROCHESTER (DAVID M. ABBATOY, JR., OF COUNSEL), FOR DEFENDANT-APPELLANT. 
DANTE TAYLOR, DEFENDANT-APPELLANT PRO SE.
CHRISTOPHER BOKELMAN, ACTING DISTRICT ATTORNEY, LYONS (WENDY EVANS LEHMANN OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Wayne County Court (Daniel G. Barrett, J.), rendered November 20, 2014. The judgment convicted defendant, upon a jury verdict, of murder in the first degree (four counts), burglary in the first degree (two counts) and arson in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously modified on the law by reducing the conviction of arson in the second degree (Penal Law § 150.15) to arson in the third degree
(§ 150.10 [1]) and vacating the sentence imposed on that count and as modified the judgment is affirmed, and the matter is remitted to Wayne County Court for sentencing on the conviction of arson in the third degree.
Memorandum: Defendant appeals from a judgment convicting him, following a jury trial, of four counts of murder in the first degree (Penal Law § 125.27 [1] [a] [vii], [viii]; [b]), two counts of burglary in the first degree (§ 140.30 [2], [3]) and one count of arson in the second degree (§ 150.15). On July 14, 2013, the bodies of a mother and daughter were found in a residence in Sodus, New York. They had gone to the residence to take care of an animal while the owner was away. Items from the residence as well as items belonging to the victims were missing, and several small fires had been set inside the residence. Using cell site location information (CSLI), police officers were able to locate the victims' cell phones in a bag in Rochester, New York. In the same bag was a receipt for a purchase made with an electronic benefits card belonging to defendant's girlfriend, with whom defendant resided. Eyewitnesses recalled seeing a "dark-colored Mercury Mountaineer" in the driveway of the Sodus residence shortly before the victims had gone to the residence, and a dark-colored Mercury Mountaineer was registered to defendant. Police officers thereafter filed an "Exigent Circumstances Form" with defendant's cell phone company, seeking historical CSLI for a four-day period encompassing the date of the crime. Upon learning that defendant's cell phone had been located in Sodus at the time of the crime, police officers were able to obtain search warrants for defendant's vehicle and residence. Inside defendant's residence were items taken from the Sodus residence, and blood found on those objects matched the DNA profile of one of the two victims. Additionally, blood found on a laundry basket inside defendant's residence as well as blood found inside defendant's vehicle matched the DNA profiles of the victims.
Initially, defendant contends that the indictment was jurisdictionally defective because the four counts charging him with murder in the first degree failed to allege that he "was more than eighteen years old at the time of the commission of the crime," as required by Penal Law § 125.27 (b). That contention lacks merit. "By alleging that defendant committed [ Murder in the First Degree,'] those counts adopted the title of' the first-degree murder statute and incorporated [*2]all of the elements of that crime, including the age element, thereby affording defendant fair notice of the charges against him' " (People v VanGorden, 147 AD3d 1436, 1437 [4th Dept 2017], lv denied 29 NY3d 1037 [2017], quoting People v Ray, 71 NY2d 849, 850 [1988]).
Defendant further contends, in his pro se supplemental brief, that his responses to pedigree questions from police officers, wherein he admitted his age, should have been precluded at trial because the People failed to provide him with a CPL 710.30 notice of those statements. We reject that contention. "Because routine administrative questioning by the police presumptively avoids any grounds for challenging the voluntariness of statements given in response to those questions, notice of such statements is not required" (People v Rodney, 85 NY2d 289, 293 [1995]).
Relying on Riley v California (— US &mdash, &mdash, 134 S Ct 2473, 2493-2494 [2014]), United States v Jones (565 US 400, 404-405 [2012]), and People v Weaver (12 NY3d 433, 445 [2009]), defendant contends that County Court erred in refusing to suppress the historical CSLI related to his cell phone because that information was obtained in violation of the Federal and New York State Constitutions as well as the Stored Communications Act ([SCA] 18 USC § 2701 et seq.). We reject that contention and conclude that the court properly refused to suppress such evidence. As we noted in People v Jiles, historical CSLI is information "contained in the business records of defendant's service provider" (— AD3d &mdash, &mdash, 2017 Slip Op 08944, *3 [4th Dept 2017]). We thus conclude that defendant's reliance on Riley, which concerned a warrantless search of "digital information on a cell phone seized from an individual who ha[d] been arrested," is misplaced (— US at &mdash, 134 S Ct at 2480), and that his reliance on Jones and Weaver, which involved the physical installation of a device to track the defendant's movements (see Jones, 565 US at 404-405; Weaver, 12 NY3d at 445), is likewise misplaced. The United States Supreme Court has held that "the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by [that party] to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed" (United States v Miller, 425 US 435, 443 [1976]). Moreover, that analysis "is not changed" by the mandatory nature of such record keeping (id.).
We thus conclude that defendant did not have a reasonable expectation of privacy in information that he revealed to his service provider (see Jiles, — AD3d at &mdash, 2017 Slip Op 08944 at *3; People v Sorrentino, 93 AD3d 450, 451 [1st Dept 2012], lv denied 19 NY3d 977 [2012]; People v Hall, 86 AD3d 450, 451-452 [1st Dept 2011], lv denied 19 NY3d 961 [2012], cert denied 568 US 1163 [2013]; see also United States v Davis, 785 F3d 498, 513 [11th Cir 2015], cert denied — US &mdash, 136 S Ct 479 [2015]; In re Application of U.S. for Historical Cell Site Data, 724 F3d 600, 615 [5th Cir 2013]; In re Application of U.S. for an Order Directing a Provider of Elec. Communication Serv. to Disclose Records to Govt., 620 F3d 304, 313-317 [3d Cir 2010]; cf. United States v Skinner, 690 F3d 772, 777 [6th Cir 2012], cert denied — US &mdash, 133 S Ct 2851 [2013]). We note that defendant does not contend that the relevant CSLI data included passively-generated data, i.e, data that was not generated by the subscriber's proactive use of his or her cell phone.
As the Fifth Circuit Court of Appeals has written, "[w]e understand that cell phone users may reasonably want their location information to remain private, just as they may want their trash, placed curbside in opaque bags . . . or the view of their property from 400 feet above the ground . . . to remain so. But the recourse for these desires is in the market or the political process: in demanding that service providers do away with such records (or anonymize them) or in lobbying elected representatives to enact statutory protections. The Fourth Amendment, safeguarded by the courts, protects only reasonable expectations of privacy" (Application of U.S. for Historical Cell Site Data, 724 F3d at 615).
With respect to defendant's state constitutional challenge, we conclude that "there is no sufficient reason' to afford cell site location information at issue here greater protection under the state constitution than it is afforded under the federal constitution" (Jiles, — AD3d at &mdash, 2017 Slip Op 08944 at *3; see People v Guerra, 65 NY2d 60, 63-64 [1985]; People v Di Raffaele, 55 NY2d 234, 241-242 [1982]; see also Sorrentino, 93 AD3d at 451; Hall, 86 AD3d at 451-452; cf. New Jersey v Earls, 214 NJ 564, 588-589, 70 A3d 630, 644 [2013]).
Defendant further contends that there was a violation of the SCA and, as a result, suppression was warranted. We need not address the merits of the alleged violation because, even if there had been such a violation, defendant would not be entitled to suppression of the evidence (see United States v Stegemann, 40 F Supp 3d 249, 270 [ND NY 2014], affd in part — Fed Appx — [2d Cir 2017]; United States v Guerrero, 768 F3d 351, 358 [5th Cir 2014], cert denied — US &mdash, 135 S Ct 1548 [2015]; United States v Corbitt, 588 Fed Appx 594, 595 [9th Cir 2014]; United States v Zodhiates, 166 F Supp 3d 328, 335 [WD NY 2016]; United States v Scully, 108 F Supp 3d 59, 87 [ED NY 2015]; see also People v Thompson, 51 Misc 3d 693, 714 [Sup Ct, NY County 2016]). "The availability of the suppression remedy for . . . statutory, as opposed to constitutional, violations . . . turns on the provisions of [the statute] rather than the judicially fashioned exclusionary rule aimed at deterring violations of Fourth Amendment rights" (United States v Donovan, 429 US 413, 432 n 22 [1977]). Here, the statute provides that a violation of the SCA may be punishable by criminal or civil penalties or administrative discipline (18 USC §§ 2701 [b]; 2707; see Zodhiates, 166 F Supp 3d at 335; Scully, 108 F Supp 3d at 88).
Before trial, the court conducted a Sandoval hearing, after which the court determined that the People would be permitted to question defendant, should he testify, concerning certain prior convictions, but would be precluded from questioning him on other convictions or adjudications. Defendant now contends that the court abused its discretion in permitting the People to question him concerning 1998 and 2004 convictions of attempted robbery in the second degree. He contends that both convictions are too similar to the charged crimes and are too remote in time to be probative. Inasmuch as defendant failed to challenge the 2004 conviction as being too remote, he failed to preserve that contention for our review (see People v Major, 61 AD3d 1417, 1417 [4th Dept 2009], lv denied 12 NY3d 927 [2009]). Moreover, defendant failed to object to the court's ultimate Sandoval ruling and thus failed to preserve for our review his challenge to the ultimate ruling (see People v Huitt, 149 AD3d 1481, 1482 [4th Dept 2017], lv denied 30 NY3d 950 [2017]; People v Taylor, 148 AD3d 1607, 1608 [4th Dept 2017]). We nevertheless exercise our power to review those contentions as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]). We conclude that the court did not abuse its discretion in permitting the prosecutor to question defendant about the two prior convictions. " Convictions involving theft, such as robbery, are highly relevant to the issue of credibility because they demonstrate the defendant's willingness to deliberately further his [or her] self-interest at the expense of society' . . . Moreover, the mere fact that the prior crimes were similar . . . in nature to the instant offenses [does] not warrant their preclusion" (People v Harris, 74 AD3d 984, 984-985 [2d Dept 2010], lv denied 15 NY3d 920 [2010]; see People v Davey, 134 AD3d 1448, 1450-1451 [4th Dept 2015]; People v Arguinzoni, 48 AD3d 1239, 1240-1241 [4th Dept 2008], lv denied 10 NY3d 859 [2008]).
Defendant raises numerous challenges to the sufficiency of the evidence supporting the conviction of various counts. First, he contends that the evidence is legally insufficient to establish his identity as the perpetrator because the People proved the element of identity through the impermissible stacking of inferences. Even assuming, arguendo, that defendant's contention is preserved for our review based on his general challenge to the proof of identity in his motion for a trial order of dismissal (see People v Gray, 86 NY2d 10, 19 [1995]), we conclude that it lacks merit. Although the Court of Appeals has stated that "[a]n inference may not be based on another inference" (People v Volpe, 20 NY2d 9, 13 [1967]), and that " the facts from which the inferences are to be drawn must be established by direct proof [instead of] conjecture, supposition, suggestion, speculation or upon other inferences' " (People v Leyra, 1 NY2d 199, 206 [1956]), "commentators have noted that the prohibition against basing an inference upon an inference, found in the case law, is merely a restatement in different terms of the principle that a jury cannot be allowed to make inferences which are based not on the evidence presented, but rather on unsupported assumptions drawn from evidence equivocal at best' " (People v Seifert, 152 AD2d 433, 441 [4th Dept 1989], lv denied 75 NY2d 924 [1990], quoting People v Kennedy, 47 NY2d 196, 202 [1979], rearg dismissed 48 NY2d 635, 656 [1979]). Here, the jury did not make any inferences based on unsupported assumptions drawn from equivocal evidence. Defendant's vehicle or one strikingly similar was seen in the driveway of the Sodus residence shortly before the women went to that residence. The victims' blood was found in defendant's car and on items found inside defendant's residence. The victims' cell phones were located in a bag with a receipt linked to defendant's girlfriend. We thus conclude, after viewing the facts in the light most favorable to the People, that " there is a valid line of reasoning and permissible inferences from which a rational jury could have found [defendant's identity] proved beyond a [*3]reasonable doubt' " (People v Danielson, 9 NY3d 342, 349 [2007] [emphasis added]; see generally People v Bleakley, 69 NY2d 490, 495 [1987]).
Defendant further contends that the evidence is not legally sufficient to support the conviction of two counts of murder in the first degree under Penal Law § 125.27 (1) (a) (vii) because there is insufficient evidence that the homicides were committed in the course of committing or in furtherance of the burglary. As defendant correctly concedes, his contention is not preserved for our review (see Gray, 86 NY2d at 19), and we reject his related contention that preservation is not required here because the proof at trial is legally sufficient to support a conviction of a lesser included offense (see People v Whited, 78 AD3d 1628, 1629 [4th Dept 2010], lv denied 17 NY3d 810 [2011]). Nevertheless, we exercise our power to reach the merits of defendant's challenge as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]), and we conclude that it lacks merit. Defendant specifically contends that, inasmuch as the crime of burglary is complete once a defendant enters the building with the requisite criminal intent (see People v Frazier, 16 NY3d 36, 41 [2010]), the murders of the women, who arrived at the residence after the burglary was complete, could not have been in the course of or in furtherance of the completed burglary. Contrary to defendant's contention, the burglary in this case was not complete at the time he entered the property. Defendant was convicted of burglary in the first degree under Penal Law § 140.30 (2) and (3), which required the People to establish the additional elements of either physical injury to the victims or the use or threatened use of a dangerous instrument. Thus, the crimes of burglary were not complete until the additional elements were established. Moreover, the Court of Appeals has made it clear that a burglar "may be said to be engaged in the commission of the crime until he [or she] leaves the building with his [or her] plunder" (Dolan v People, 64 NY 485, 497 [1876]; cf. People v Cavagnaro, 99 AD2d 534, 534 [2d Dept 1984]).
Contrary to defendant's additional contention, the People were not required to establish that the murders were necessary to advance the purpose of the burglary (see People v Henderson, 25 NY3d 534, 541 [2015]). Rather, "[t]he in furtherance of' element requires a logical nexus between a murder and a felony' " (id.). Here, the evidence, viewed in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]), is legally sufficient to establish such a nexus and support the conviction of two counts of murder in the first degree under Penal Law § 125.27 (1) (a) (vii) (see Bleakley, 69 NY2d at 495) and, upon viewing the evidence in light of the elements of the crime of murder in the first degree as charged to the jury (see Danielson, 9 NY3d at 349), we conclude that the verdict on those counts is not against the weight of the evidence (see Bleakley, 69 NY2d at 495).
Defendant further contends that the evidence is not legally sufficient to support the conviction of arson in the second degree because there is no evidence that the victims were still alive at the time the fires were set and, therefore, the fires were not set while "another person who [was] not a participant in the crime [was] present" (Penal Law § 150.15). We agree with defendant and reject the People's contention that section 150.15 does not require that the person be alive when the fire is started.
Although there are cases in which defendants have been convicted of arson in the second degree where the evidence established that the victim was already dead at the time the fire was started (see People v Douglas, 36 AD2d 994, 994-995 [3d Dept 1971], affd 30 NY2d 592 [1972]; see also People v Pierre, 37 AD3d 1172, 1173 [4th Dept 2007], lv denied 8 NY3d 989 [2007]), it appears that the defendants in those cases did not challenge the sufficiency of the evidence on the ground that the victims were no longer alive when the fires were started. We thus conclude that those cases lack any precedential value in determining the issue before this Court.
Penal Law article 150 does not contain any definition of "person." We thus rely on the definition of person found in section 10.00 (7), which provides that " [p]erson' means a human being, and where appropriate, a public or private corporation, an unincorporated association, a partnership, a government or a governmental instrumentality." Although article 125 defines a person as "a human being who has been born and is alive" (§ 125.05 [1]), that definition is applicable only to article 125 and "was inserted merely to insure that the death of a person' would not include the abortional killing of an unborn child" (People v Ebasco Servs. Inc., 77 Misc 2d 784, 787 [Sup Ct, Queens County 1974]).
Where, as here, the Penal Law article does not contain a different definition of person, we rely on cases interpreting the Penal Law § 10.00 (7) definition of person as applied to other crimes. Those cases establish that the definition of person contemplates a living human being. For example, under article 130, which deals with sex offenses, the crime of "rape" cannot be committed where the "person" is dead at the time of the offense. In such a situation, the defendant could be charged with attempted rape if the defendant believed that the "person" was alive at the time of the crime (see People v Gorman, 150 AD2d 797, 797 [2d Dept 1989], lv denied 74 NY2d 847 [1989], reconsideration denied 75 NY2d 770 [1989]), or sexual misconduct under section 130.20 (3), which prohibits "sexual conduct with . . . a dead human body." If article 130, relying on the definition of person in section 10.00 (7), draws a distinction between a living human being and a "dead human body," then we see no reason that article 150 should not do so as well. Indeed, the distinguishing factor that elevates arson in the third degree to arson in the second degree is the danger to human life; if there is no living person in the building, then there is no danger to human life.
According to the testimony of the Deputy Medical Examiner, the evidence "all indicate[d] that [the mother] was already dead at the time the fire was started." The evidence also established that the daughter would have died within a minute of suffering one particular stab wound to her chest. Viewing the evidence in the light most favorable to the People (see Contes, 60 NY2d at 621), we thus conclude that the evidence is legally insufficient to establish that either of the victims was still alive at the time the fires were started (see generally Bleakley, 69 NY2d at 495). Inasmuch as the evidence is legally sufficient to establish the lesser included offense of arson in the third degree (Penal Law § 150.10 [1]), which requires only that a person "intentionally damages a building or motor vehicle by starting a fire or causing an explosion," we modify the judgment by reducing the conviction of arson in the second degree to arson in the third degree (see CPL 470.15 [2] [a]) and vacating the sentence imposed on that count, and we remit the matter to County Court for sentencing thereon.
Entered: February 2, 2018
Mark W. Bennett
Clerk of the Court