Egan Jr., J.
Appeal from a judgment of the County Court of Schenectady County (Giardino, J.), rendered May 17, 2013, upon a verdict convicting defendant of the crimes of robbery in the second degree, assault in the second degree, assault in the third degree and endangering the welfare of a child.
Defendant and the victim married in 2007 and have three children in common. On the evening of April 21, 2012, defend *1298 ant and the victim had a disagreement, prompting the victim to leave their shared residence and spend the night in a local hotel. At some point during the night, defendant ascertained the victim’s whereabouts, went to the hotel and retrieved the family vehicle, leaving the victim without transportation. As a result, when the victim awoke on the morning of April 22, 2012, she called her friend, Danielle Schoonmaker, for a ride. Schoonmaker picked up the victim, who was reluctant to return home, and drove her to Schoonmaker’s residence. After overhearing a telephone conversation between the victim and defendant, Schoonmaker offered — in an effort to give everyone involved “some time to cool off” — to drive to the home that the victim shared with defendant and pick up their children. When Schoonmaker arrived at the victim’s home, defendant’s father was present, and he persuaded her to leave the children with him. Schoonmaker then returned to her residence, where she had left her three children — then 2, 4 and 11 years old — with the victim.
In the interim, defendant and his brother arrived at Schoon-maker’s home looking for the victim. After defendant and his brother entered the residence without knocking, defendant’s brother turned up the volume on the television and told Schoonmaker’s three children, who were sitting in the living room, not to go into the bathroom. Defendant then proceeded to the bathroom, where he found the victim sitting on the toilet. Defendant struck the victim’s face with his fist, knocking her off of the toilet and into the tub; as the victim fell, she grabbed the shower curtain — pulling it down and breaking the shower curtain rod into two pieces. According to the victim, she and defendant each grabbed a portion of the shower rod and began striking one another.[1] This altercation continued until defendant’s brother intervened and helped the victim out of the tub. The victim then walked outside and defendant soon followed, carrying the victim’s belongings — including her purse. When the victim attempted to retrieve her purse, defendant “smashed it back” and struck the victim in the head with the purse, resulting in two lacerations that eventually required stapling in order to close the wounds. Schoonmaker arrived in time to witness this portion of the assault and testified that defendant hit the victim “once or twice” while he “was trying to get the *1299 purse.” Defendant and his brother then left the premises with the victim’s purse and cell phone.
As a result of this incident, defendant was indicted and charged with burglary in the first degree, robbery in the second degree, assault in the second degree, assault in the third degree and endangering the welfare of a child. The matter proceeded to trial and, at the close of the People’s proof, County Court dismissed the burglary count. The remaining counts, along with the lesser included offense of robbery in the third degree, were submitted to the jury, and the jury thereafter convicted defendant as charged.[2] Defendant’s subsequent motion to set aside the verdict was denied, and County Court thereafter sentenced defendant, as a second felony offender, to an aggregate prison term of five years followed by five years of post-release supervision. This appeal by defendant ensued.[3]
We affirm. Initially, we reject defendant’s assertion that he was deprived of his right to testify before the grand jury. Where, as here, “a defendant. . . has been arraigned in a local criminal court upon a currently undisposed of felony complaint charging an offense which is a subject of the prospective or pending grand jury proceeding!,] . . . the district attorney must notify the defendant or his [or her] attorney of the prospective or pending grand jury proceeding and accord the defendant a reasonable time to exercise his [or her] right to appear as a witness therein” (CPL 190.50 [5] [a]; see People v Lanier, 130 AD3d 1310, 1311 [2015], lv denied 26 NY3d 1009 [2015]; People v Ellison, 119 AD3d 602, 604 [2014]; People v Lyons, 40 AD3d 1121, 1121 [2007], lv denied 9 NY3d 878 [2007]). A defendant, in turn, “has a right to appear before such grand jury as a witness in his [or her] own behalf if, prior to the filing of any indictment. . ., he [or she] serves upon the district attorney of the county a written notice making such request and stating an address to which communications may be sent” (CPL 190.50 [5] [a]; see People v Sain, 111 AD3d 964, 965 [2013], lv denied 23 NY3d 967 [2014]; People v Kirk, 96 AD3d 1354, 1358-1359 [2012], lv denied 20 NY3d 1012 [2013]).
The record reflects that defendant was arraigned on a felony complaint in Niskayuna Town Court on April 25, 2012. An audio recording of that proceeding reveals that defendant had completed an application for assigned counsel, and the court *1300 advised defendant that, if he qualified, the Schenectady County Conflict Defender’s Office would be assigned to represent him. Prior to the conclusion of that proceeding, the People served defendant with notice that the matter was scheduled to be presented to a grand jury on April 27, 2012 at 1:00 p.m. The People also indicated that such notice would be sent to the Conflict Defender’s Office the following morning, as well as to a specific attorney therein, and the record contains an email — sent at 10:51 a.m. on April 26, 2012 — confirming receipt (via fax) of the CPL 190.50 notice by the Conflict Defender’s Office. According to the People, defendant was indicted the following day — April 27, 2012.
There is no question that defendant was served with notice of presentment to the grand jury on April 25, 2012 and that the Conflict Defender’s Office, which presumptively was assigned to represent defendant, received such notice the following morning — more than 24 hours before the scheduled presentation of the matter to the grand jury on April 27, 2012 at 1:00 p.m. There also is no question that the People never received written notice of defendant’s intention to testify before the grand jury as required by CPL 190.50 (5) (a). To the extent that defendant now contends that he orally advised Town Court of his desire to testify before the grand jury, two points are worth noting. First, unless the People have waived the statutory written notice requirement (see People v Young, 138 AD2d 764, 765 [1988], lv denied 72 NY2d 868 [1988]), oral notice of a defendant’s desire to testify is insufficient (see People v Colantonio, 277 AD2d 498, 499 [2000], lv denied 96 NY2d 781 [2001]; People v Hunter, 169 AD2d 538, 538 [1991], lvs denied 77 NY2d 907 [1991]) in all but the rarest of circumstances (see People v Gini, 72 AD2d 752, 753 [1979]). No extenuating circumstances exist here, and nothing in the record suggests that the People waived the statutory written notice requirement. Further, the audio recording of the proceeding in Town Court fails to substantiate defendant’s claim that he gave oral notice of his desire to appear before the grand jury. Hence, upon reviewing the record, we are satisfied that the People provided reasonable notice to both defendant and the Conflict Defender’s Office — following which defendant failed to timely notify the People in writing of his intention to appear before the grand jury (see People v Tole, 94 AD3d 1334, 1335 [2012], lv denied 19 NY3d 968 [2012]; People v Hernandez, 42 AD3d 657, 662 [2007]; compare People v Ellison, 119 AD3d at 604).
Defendant’s related claim — that he was not afforded sufficient time to confer with counsel in this regard — also is lack *1301 ing in merit. Both defendant and the Conflict Defender’s Office were on notice of the impending grand jury presentation, and the fact that counsel and defendant were unable to confer prior to the grand jury returning an indictment neither rendered the People’s notice unreasonable (compare People v Tole, 94 AD3d at 1334-1335, and People v Ballard, 13 AD3d 670, 671 [2004], lv denied 4 NY3d 796 [2005], with People v Chappelle, 121 AD3d 1166, 1167-1168 [2014], lv denied 24 NY3d 1118 [2015]) nor amounted to the denial of the effective assistance of counsel (cf. People v Sain, 111 AD3d at 965). Accordingly, County Court properly denied defendant’s motion to dismiss the indictment.
Defendant next contends that his convictions are not supported by legally sufficient evidence and, further, are against the weight of the evidence. Although defendant’s legal sufficiency argument is preserved only with respect to his convictions of robbery in the second degree and assault in the second degree, “our weight of the evidence review necessarily involves an evaluation of whether all elements of the charged crime [s] were proven beyond a reasonable doubt at trial” (People v Jones, 136 AD3d 1153, 1156 [2016] [internal quotation marks and citations omitted], lv denied 27 NY3d 1000 [2016]; see People v Speed, 134 AD3d 1235, 1235-1236 [2015]). Insofar as is relevant here, “[a] person is guilty of robbery in the second degree when he [or she] forcibly steals property and when . . . [i]n the course of the commission of the crime or of immediate flight therefrom, he [or she] or another participant . . . [c]auses physical injury to any person who is not a participant in the crime” (Penal Law § 160.10 [2] [a]; see People v Gordon, 23 NY3d 643, 649 [2014]). “A person commits ‘forcible stealing’ when, during the commission of a larceny, such individual ‘uses or threatens the immediate use of physical force upon another person for the purpose of . . . preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking’ ” (People v Gordon, 23 NY3d at 649-650, quoting Penal Law § 160.00 [1] [brackets and footnote omitted]). Additionally, “[a] person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself [or herself] or to a third person, he [or she] wrongfully takes, obtains or withholds such property from an owner thereof” (Penal Law § 155.05 [1]; see People v Bigness, 28 AD3d 949, 950 [2006], lv denied 7 NY3d 810 [2006]). Finally, the definition of “physical injury” includes, insofar as is relevant here, “substantial pain” (Penal Law § 10.00 [9]).
The count charging defendant with robbery in the second *1302 degree pertained to the forcible taking of the victim’s purse. As noted previously, the victim testified that, following the initial assault in the bathroom, she walked outside and observed defendant emerge from Schoonmaker’s residence with, among other things, her purse. When the victim attempted to retrieve her purse, defendant “smashed it back” and struck her in the head with the purse. Defendant then left the premises with the victim’s purse. The victim’s testimony on this point was corroborated by Schoonmaker, who testified that defendant hit the victim “once or twice” while he “was trying to get the purse.” According to the physician’s assistant who treated the victim following this incident, the victim sustained, among other injuries, two head lacerations that required stapling in order to close the wounds — one of which was described as having “a moderate gape.” The physician’s assistant further testified that, when asked to describe her level of pain, with “zero being no pain . . . [and] 10 being the worst pain that you can have,” the victim reported a pain level of 10 with respect to her head injuries. In light of such testimony, and inasmuch as “intent to commit a robbery may be inferred from defendant’s conduct and the surrounding circumstances” (People v Chaplin, 134 AD3d 1148, 1151 [2015]), we find that the jury’s verdict convicting defendant of robbery in the second degree is supported by legally sufficient evidence and is in accord with the weight of the evidence.[4]
We next turn to defendant’s conviction of assault in the second degree, which stemmed from the injuries received by the victim during the purse incident. Insofar as is relevant here, “[a] person is guilty of assault in the second degree when . . . [i]n the course of and in furtherance of the commission or attempted commission of a felony, ... or of immediate flight therefrom, he, [she,] or another participante,] if there be any, causes physical injury to a person other than one of the participants” (Penal Law § 120.05 [6]). Defendant’s primary challenge to his conviction of assault in the second degree is the alleged absence of an underlying felony. However, inasmuch as we have upheld defendant’s conviction of robbery in the second degree, his argument on this point necessarily fails. Moreover, as noted previously, there is no question that the victim sustained physical injuries as a result of this incident. Accord *1303 ingly, we are satisfied that defendant’s conviction of assault in the second degree is supported by legally sufficient evidence and is in accord with the weight of the evidence.
As for the remaining offenses, a person is guilty of assault in the third degree when — as applied to the facts before us — such person, “[w]ith intent to cause physical injury to another person, . . . causes such injury to such person” (Penal Law § 120.00 [1]). This particular count of the indictment pertained to the assault that occurred in Schoonmaker’s bathroom. Although the victim attempted to minimize defendant’s conduct during this incident, she nonetheless testified that defendant “hit” her as she was sitting on the toilet, causing her to fall into the bathtub, following which defendant struck her body with the broken shower curtain rod “[o]nce or twice” and hit her in the head with “[h]is fists.” As noted previously, this incident was witnessed, at least in part, by Schoonmaker’s oldest child, who estimated that defendant struck the victim roughly 30 times. Given the testimony and other evidence documenting the victim’s various injuries, we reject defendant’s claim that the jury’s verdict convicting him of assault in the third degree was against the weight of the evidence. We reach a similar conclusion regarding defendant’s conviction of endangering the welfare of a child (see Penal Law § 260.10 [1]). Accordingly, we discern no basis upon which to set aside the judgment of conviction upon such grounds.
Defendant’s remaining arguments do not warrant extended discussion. To the extent that defendant contends that his recorded telephone conversation with the victim — made while he was incarcerated in the local jail — was protected by the marital privilege (see CPLR 4502 [b]; CPL 60.10), we disagree. The marital privilege “does not protect every remark between spouses during a marriage” (People v Howard, 134 AD3d 1153, 1153 [2015], lv denied 27 NY3d 965 [2016]) and, more to the point, does not “forbid inquiry into the personal wrongs committed by one spouse against the other” (id. at 1154 [internal quotation marks and citation omitted]). The privilege also “does not extend to communications between spouses in which they are jointly advancing a criminal conspiracy or aiding each other in the commission of an on-going crime” (People v Watkins, 63 AD2d 1033, 1034 [1978] [internal quotation marks and citation omitted], lvs denied 45 NY2d 785 [1978], cert denied 439 US 984 [1978]), nor does it apply “when the substance of [the] communication ... is revealed to third parties” (People v Howard, 134 AD3d at 1154 [internal quotation marks and citation omitted]).
*1304 At the start of the conversation, defendant was advised that the call he was placing “may be recorded or monitored.” During his conversation with the victim, throughout the course of which any number of other voices may be heard in the background, defendant made repeated references to the affidavits that the victim and Schoonmaker needed to complete in order to “get [him] out of [jail].” Notably, defendant and the victim discussed at length “what need[ed] to be said” in order to “clear” him of the underlying charges, and defendant reiterated that everyone involved — particularly Schoonmaker— needed to “stop worrying” about a potential “perjury charge,” noting that the victim and/or Schoonmaker could “erase” the “under penalty of perjury” language contained in the affidavits — that defendant apparently prepared — if they were concerned about a future prosecution for such an offense. Defendant further advised the victim that he was “not playing” in this regard and that he was “not going to be the only one suffering” as a result of his incarceration. When the victim asked defendant who would be suffering, defendant replied, “All of us.” Under these circumstances, we have no difficulty concluding that the substance of the phone call was not protected by the marital privilege and, therefore, was properly admitted into evidence at trial. Defendant’s related claim — that County Court erred in allowing testimony as to defendant’s uncharged violation of the order of protection that precluded him from having any contact with the victim — is equally unpersuasive.
To the extent that defendant asserts that County Court further erred in refusing to charge petit larceny as a lesser included offense of robbery in the second degree, there simply is “no reasonable view of the evidence, viewed most favorably to defendant, that he stole [the victim’s purse] without using force” (People v Green, 134 AD3d 418, 418 [2015], lv denied 27 NY3d 965 [2016]). Accordingly, County Court properly denied defendant’s request to charge on this point. As to the issue of sentencing, we are unpersuaded that defendant met the criteria set forth in Penal Law § 60.12 and, therefore, County Court properly denied his request to invoke the alternative sentencing provisions thereof. Finally, defendant’s claim of prosecutorial misconduct, as well as the alleged Rosario and Batson violations, are unpreserved for our review in the absence of a timely objection. Defendant’s remaining contentions, including his assertion that he was denied the effective assistance of counsel, have been examined and found to be lacking in merit.
McCarthy, J.P., Lynch, Devine and Mulvey, JJ., concur.
Ordered that the judgment is affirmed.

. A portion of this incident was witnessed by Schoonmaker’s oldest child, who testified that defendant hit the victim with the broken shower rod approximately 30 times during the course of the altercation, which lasted roughly 10 to 15 minutes. Although the victim claimed that defendant only struck her with the pole “[o]nce or twice,” she acknowledged that he also hit her in the head with his fists.

. Prior to sentencing, County Court granted defendant’s motion to dismiss the lesser included offense of robbery in the third degree.

. Defendant’s subsequent motion for a stay of execution of judgment and release on recognizance or bail pending appeal was denied by a Justice of this Court.

. To the extent that defendant contends that the victim’s purse “was appropriated under a claim of right made in good faith” (Penal Law § 155.15 [l]); we need note only that this defense to specific types of larcenies has limited application to a forcible taking, i.e., robbery (see People v Pagan, 19 NY3d 91, 96 [2012]; People v Green, 5 NY3d 538, 542-545 [2005]) and, in our view, has no application here.