People v Miller (2018 NY Slip Op 02364)





People v Miller


2018 NY Slip Op 02364


Decided on April 5, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 5, 2018

107571

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
MAURICE MILLER, Appellant.

Calendar Date: February 13, 2018

Before: McCarthy, J.P., Lynch, Clark, Aarons and Pritzker, JJ.


Matthew C. Hug, Albany, for appellant.
Joel E. Abelove, District Attorney, Troy (Vincent J. O'Neill of counsel), for respondent.


Pritzker, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Rensselaer County (Ceresia, J.), rendered April 6, 2015, upon a verdict convicting defendant of the crime of criminal sale of a controlled substance in the third degree.
Defendant was indicted for the crime of criminal sale of a controlled substance in the third degree for allegedly selling heroin to a paid confidential informant (hereinafter CI). After a jury trial, defendant was convicted as charged and sentenced as a second felony drug offender to six years in prison followed by two years of postrelease supervision. Defendant now appeals and we affirm.
Initially, we reject defendant's contention that he was
denied his right to appear before the grand jury. Defendant's counsel at the time was served with a CPL 190.50 notice on June 4, 2015, which indicated that the People would present a case against defendant to a grand jury the following day at 10:00 a.m. Defendant never served on the People written notice of his intent to testify before the grand jury. While the People's notice gave defendant approximately 24 hours or less to exercise his statutory right to appear at the grand jury proceeding, this was a reasonable period of time pursuant to the statute as there were no exceptional circumstances that precluded defendant from conferring with his attorney about the decision to testify or otherwise inhibited his ability to notify the People of his intent to testify (see People v Dorsey, 151 AD3d 1391, 1392-1393 [2017], lv denied 30 NY3d 949 [2017]; see generally People v Wilkerson, 140 AD3d 1297, 1299-1300 [2016], lv denied 28 NY3d 938 [2016]).
Turning to defendant's evidentiary claims, his challenge to the legal sufficiency of the evidence is unpreserved given that his motion for a trial order of dismissal at the close of the People's case was not specifically directed at the error urged before this Court (see People v Hawkins, 11 NY3d 484, 492 [2008]; People v Cruz, 131 AD3d 724, 724-725 [2015], lv denied 26 NY3d 1087 [2015]). "Nevertheless, our weight of the evidence review necessarily involves an evaluation of whether all elements of the charged crime were proven beyond a reasonable doubt" (People v Odofin, 153 AD3d 972, 974 [2017] [internal quotation marks, brackets and citations omitted]; see People v Cruz, 131 AD3d at 725). As relevant here, "[a] person is guilty of criminal sale of a controlled substance in the third degree when he [or she] knowingly and unlawfully sells . . . a narcotic drug," such as heroin (Penal Law § 220.39 [1]; see Public Health Law
§ 3306 [I] [c] [11]).
John Comitale, a police detective, testified that, in June 2014, he was contacted by the CI, who stated that he could buy heroin from defendant. Comitale thereafter acted as the "controlling officer" during the ensuing "buy and bust" operation that occurred later that same day. Comitale explained that the CI came to Comitale's office and called defendant to order 10 bags of heroin, which defendant stated would cost $70. Comitale obtained three $20 bills and two $5 bills from a police department safe to use for buy money and photocopied those bills, indicating the date on the photocopy. Comitale then searched the CI and, after failing to find any money or contraband, gave the CI the buy money and equipped him with a transmitter. Comitale testified that the CI thereafter left with the buy money, and a "take-down team" was assembled and positioned to arrest defendant after the transaction. Comitale then followed the CI in an unmarked vehicle until the CI indicated over the transmitter that he could see defendant. Comitale pulled over approximately 55 or 60 feet from the CI's parked vehicle and, using binoculars, observed defendant approach the CI's window and engage in a "hand-to-hand transaction." Following the transaction, defendant walked away from the CI's vehicle, and the CI said a code word over the transmitter to indicate that the deal was complete. Comitale gave a description of defendant's clothing and the direction that he was walking to the near-by police units and then followed the CI to a prearranged location where he took from the CI 10 red "glassine wax envelopes with an off-whitish, brownish powder inside." Comitale paid the CI $100 for participating in the buy and bust. He then placed the envelopes in an evidence bag and later turned the bag over to John Colaneri, a police sergeant. Comitale testified that Colaneri gave him the currency confiscated from defendant after he was arrested, which Comitale examined by comparing each bill's serial number to those photocopied before the operation, and that $70 of the currency matched the photocopied buy money.
The CI testified that earlier the same day, he approached defendant on the street, who he recognized because they were both from the same area. The CI testified that he then contacted Comitale and thereafter placed a telephone call to defendant from Comitale's office, during which he ordered 10 bags of heroin for $70. Defendant told the CI where they would meet to complete the transaction. The CI further testified that after he and his vehicle were searched, he received $70 in buy money from the police — consisting of three $20 bills and two $5 bills. The CI testified that defendant called and changed the location of the deal and, when the CI arrived at the new location, he saw defendant and parked his car. At that point, defendant approached the CI's passenger window, the CI gave defendant the buy money and defendant gave the CI 10 red "wax baggies" that he later gave to Comitale.
William Bowles, a second police detective, testified that, although he did not see the transaction between the CI and defendant, he heard Comitale's description of defendant and was able to identify and arrest him based on that description. Bowles testified that while arresting [*2]defendant, he found money on defendant's person. Colaneri testified regarding the 10 red bags that Comitale gave him and money that Bowles gave him, which he took to the police department for processing. There was also testimony from William Gillett, a civilian who works for the police department's property evidence room, regarding storage of the evidence bag and subsequent transportation of the bag to the State Police lab for testing. Kathryn Botting, a forensic scientist for the State Police, testified that she tested the substance contained in the 10 red glassine bags and determined that it was heroin. Considering the foregoing testimony, it would not have been unreasonable for the jury to come to a different conclusion given minor inconsistencies between Comitale's testimony at trial and his earlier testimony before the grand jury and at a pretrial suppression hearing, as well as inconsistencies in the CI's testimony at trial. However, viewing the evidence in a neutral light and affording due deference to the jury's credibility determinations, the verdict was not against the weight of the evidence (see People v Torres, 146 AD3d 1086, 1087-1088 [2017], lv denied 29 NY3d 1087 [2017]; People v Nichol, 121 AD3d 1174, 1176-1177 [2014], lv denied 25 NY3d 1205 [2015]).
Defendant also asserts that his conviction should be reversed because he was not provided with notice, pursuant to CPL 710.30 (1), that the CI identified him using a picture provided by the police. We disagree. During the CI's initial testimony, he averred that he only knew defendant by his street name until Comitale pulled up defendant's picture on a computer and told the CI defendant's real name. Defendant thereafter moved for preclusion of any identification of him because he was not provided notice pursuant to CPL 710.30. Before taking a position on defendant's motion, the People requested an opportunity to confer with the witnesses off the record because this was the first that the People had heard of an identification procedure during this operation. County Court granted that application. When the court reconvened, the People alleged that no identification procedure was used and that the CI misspoke. The court thereafter ordered, with defendant's consent, a "preclusion hearing" to first determine whether an identification procedure took place prior to the buy and bust operation, and, if so, whether preclusion of any testimony related thereto was the appropriate remedy. At the hearing, both Comitale and the CI testified that there was no identification procedure, and the CI testified that, in his prior testimony, he was talking about general procedure, not this particular case. At the conclusion of the hearing, County Court credited Comitale's testimony that there was, in fact, no identification procedure and that the CI simply misspoke or confused this buy and bust with a different operation. We accord deference to this determination (see generally People v Hayden, 155 AD3d 1309, 1310 [2017]; People v Steigler, 152 AD3d 1083, 1084 [2017], lv denied 30 NY3d 983 [2017]) and conclude that it was not error to deny defendant's request to preclude evidence.
We also hold that County Court did not err by denying defendant's request for an expanded jury charge regarding the CI's credibility because he was a paid informant and was compensated for participating in the buy and bust operation and for testifying in the resulting criminal action. Given defendant's explicit efforts throughout to impeach the CI's credibility by highlighting his motivation to lie in this case, County Court did not abuse its discretion by concluding that the generic jury charge on a witness's motivation to lie was sufficient and that an additional charge directed only at the CI's credibility was unnecessary (see People v Inniss, 83 NY2d 653, 658-659 [1994]; People v Acevedo, 112 AD3d 985, 988 [2013], lv denied 23 NY3d 1017 [2014]).
Finally, we find no merit to defendant's claim that the sentence imposed was harsh and excessive. "A sentence that falls within the permissible statutory range will not be disturbed unless it can be shown that the sentencing court abused its discretion or extraordinary circumstances exist warranting a modification" (People v Malloy, 152 AD3d 968, 971 [2017] [*3][internal quotation marks and citation omitted], lv denied 30 NY3d 981 [2017]; see People v Booker, 141 AD3d 834, 837 [2016], lv denied 28 NY3d 1026 [2016]). Given defendant's extensive criminal history, we perceive neither an abuse of discretion nor any extraordinary circumstances warranting a modification of the sentence, which was less than the maximum (see People v Cooley, 149 AD3d 1268, 1271 [2017], lvs denied 30 NY3d 979, 981 [2017]; People v Booker, 141 AD3d at 837).
McCarthy, J.P., Lynch, Clark and Aarons, JJ., concur.
ORDERED that the judgment is affirmed.