People v Thaxton (2023 NY Slip Op 06561)

People v Thaxton

2023 NY Slip Op 06561

Decided on December 21, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 21, 2023

112253
[*1]The People of the State of New York, Respondent,
v
John Thaxton, Also Known as Tayvon Johnson, Also Known as Airyck Johnson, Also Known as Gwalla, Appellant.

Calendar Date:October 18, 2023

Before:Clark, J.P., Aarons, Pritzker, Ceresia and Fisher, JJ.

Carolyn B. George, Albany, for appellant.
P. David Soares, District Attorney, Albany (Daniel J. Young of counsel), for respondent.

Pritzker, J.
Appeal from a judgment of the Supreme Court (Roger D. McDonough, J.), rendered November 15, 2019 in Albany County, upon a verdict convicting defendant of the crimes of robbery in the first degree and robbery in the second degree (two counts).
On July 31, 2018 at approximately 2:30 a.m. in the City of Albany, the proprietor of a convenience store (hereinafter the first victim) was locking up when two assailants grabbed him, punched him and, at knife point, forced him back into the store where they stole, among other things, several hundred dollars in cash. Then, on the evening of August 3, 2018, the Albany Police Department responded to an apartment building in the City of Albany following a report of a woman (hereinafter the second victim) being robbed by two assailants. Defendant and the codefendant, Jaquan Scott, were arrested and indicted in connection with the two incidents. Their cases were subsequently severed and tried separately.[FN1] As relevant here, defendant was charged with robbery in the first degree and robbery in the second degree in connection with the robbery of the first victim, and with two counts of robbery in the second degree in connection with the robbery of the second victim.[FN2] A five-day jury trial on the robbery counts ensued. Prior to commencement of the trial, Supreme Court granted the People's motion, to which defendant consented, to dismiss count 7 of indictment No. 7-8882 charging robbery in the second degree. The jury returned a guilty verdict on all remaining charges. At sentencing, Supreme Court denied defendant youthful offender adjudication and sentenced him to a prison term of 15 years followed by five years of postrelease supervision on the first degree robbery conviction (count 5 of indictment No. 7-8882), a concurrent prison term of 10 years followed by five years of postrelease supervision on one second degree robbery conviction (count 6 of indictment No. 7-8882) and, on the remaining robbery in the second degree conviction (count 8 of indictment no. 7-8882), to a consecutive prison term of 10 years followed by five years of postrelease supervision.[FN3] Defendant appeals.
Defendant contends that Supreme Court erred in not granting his Batson challenge because the People failed to proffer nonpretextual reasons for using peremptory challenges to exclude two jurors from the initial jury panel — both of whom were black. When a Batson challenge for the use of a peremptory strike is raised, a court must engage in "a three-step test to assess whether peremptory challenges have been used by a party to exclude potential jurors on the basis of race" (People v Hecker, 15 NY3d 625, 634 [2010], cert denied Black v New York, 563 US 947 [2011], citing Batson v Kentucky, 476 US 79, 94-98 [1986]). "At step one, the movant must make a prima facie showing that the peremptory strike was used to discriminate; at step two, if that showing is made, the burden shifts to the opposing party to articulate a non-discriminatory reason for striking [*2]the juror; and finally, at step three, the trial court must determine, based on the arguments presented by the parties, whether the proffered reason for the peremptory strike was pretextual and whether the movant has shown purposeful discrimination" (People v Bridgeforth, 28 NY3d 567, 571 [2016] [citation omitted]; accord People v Hunter, 219 AD3d 975, 979 [3d Dept 2023]). "We accord 'great deference on appeal' to a trial judge's resolution of a Batson challenge, including a determination regarding discriminatory motive" (People v Malloy, 33 NY3d 1078, 1079 [2019], quoting Hernandez v New York, 500 US 352, 364 [1991]).
Here, defendant, a black male, based his Batson claim on the People's use of peremptory challenges to remove juror No. 5 and juror No. 8. Specifically, as to step one, defendant claimed that, as the only two black prospective jurors on the initial jury panel, they were excluded on the basis of race. In response, and in accordance with the second step of the framework, Supreme Court directed the People to identify a race-neutral reason for the peremptory challenges. With regard to juror No. 5, the People stated that the reason for using a peremptory challenge was that the juror was an attorney employed at the New York State Assembly, which had "just passed bail reform, discovery reform, and created a new committee to go after prosecutors." As for juror No. 8, the People stated that the basis for the peremptory challenge was that the juror's hair was pink, which, in the People's opinion, "is completely nonconformist," also clarifying that "no matter what a person's race was that was put in this jury panel, if they had pink hair or blue hair or green hair, these would be the types of things that [the People] would immediately notice and strike those people with peremptory challenges." Given the facially race-neutral reasons offered by the People, the court gave defense counsel an opportunity "to persuade the court that the stated reasons were pretextual and to make a record that would support that conclusion" (People v Kirkley, 172 AD3d 1541, 1545 [3d Dept 2019], lv denied 33 NY3d 1106 [2019]). Although defendant argued that the proffered explanation of hair color as to juror No. 8 was an "absolute stretch," as to juror No. 5, defendant conceded that the juror being a lawyer was a "more legitimate" basis for the peremptory challenge. Then, at step three of the analysis, the court found that the People's basis for the peremptory challenges were not a pretext for intentional discrimination and dismissed the jurors. According the requisite deference to Supreme Court's determination, "we find no error in its finding that the proffered justification[s were] valid and nonpretextual" (People v Green, 141 AD3d 1036, 1040 [3d Dept 2016] [internal citations omitted], lv denied 28 NY3d 1072 [2016]; see People v Callicut, 101 AD3d 1256, 1261 [3d Dept 2012], lv denied 20 NY3d 1096 [2013]).
Defendant next contends that Supreme Court erred in denying [*3]his request to submit to the jury the charge of petit larceny as a lesser included offense in relation to the count charging defendant with robbery in the second degree pertaining to the second victim.[FN4] Initially, it is well settled that petit larceny is a lesser included offense of robbery in the second degree because it is impossible to commit robbery in the second degree without concomitantly committing petit larceny (see CPL 1.20 [37]; People v Rivera, 101 AD3d 1478, 1481 [3d Dept 2012], lv denied 20 NY3d 1103 [2013]; People v Bowman, 79 AD3d 1368, 1369-1370 [3d Dept 2010], lv denied 16 NY3d 828 [2011]). Thus, the issue distills to "whether any reasonable view of the evidence, considered in the light most favorable to . . . defendant, would permit a jury to acquit on the greater charge but still convict on the lesser one" (People v Bowman, 79 AD3d at 1370; see People v Almonte, 33 NY3d 1083, 1084 [2019]). To that end, Penal Law § 160.10 (1), as charged in relation to the second victim, provides that "[a] person is guilty of robbery in the second degree when he [or she] forcibly steals property and when . . . [h]e [or she] is aided by another person actually present." "A person is guilty of petit larceny when he [or she] steals property" (Penal Law § 155.25). At trial, the second victim testified that when she refused defendant and Scott's demand for money, defendant grabbed her cell phone and wallet and defendant and Scott punched and hit her. She further testified that defendant got out of the car and started opening her wallet to take, among other things, her money while Scott continued to beat her. Significantly, no evidence was introduced contradicting the second victim's version of the events. Thus, there is no reasonable view of the evidence to logically support a finding that defendant stole the second victim's property without using force so as to warrant a charge of petit larceny (see People v Wilkerson, 140 AD3d 1297, 1304 [3d Dept 2016], lv denied 28 NY3d 938 [2016]; People v Bowman, 79 AD3d at 1370).
Defendant also asserts that Supreme Court did not meaningfully respond to a note from the jury requesting that the legal definition of the charges be reread and improperly emphasized the definition of intent. However, not only did defendant agree to the court rereading the "entire charges to [the jury] with the definitions of those charges," but then, when the court did so, defendant did not lodge any objection, rendering his challenge to the court's alleged supplemental instructions unpreserved (see People v Morris, 27 NY3d 1096, 1098 [2016]; People v Leonard, 177 AD3d 1158, 1162 [3d Dept 2019], lv denied 34 NY3d 1160 [2020]; People v Snow, 170 AD3d 1276, 1277 [3d Dept 2019], lv denied 33 NY3d 1035 [2019]).
Finally, defendant argues that Supreme Court erred in denying him youthful offender status, a decision that "rests within the sound exercise of the sentencing court's discretion and, absent a clear abuse of that discretion, its decision [*4]will not be disturbed" (People v Wolcott, 154 AD3d 1001, 1001 [3d Dept 2017] [internal quotation marks and citations omitted], lv denied 31 NY3d 1089 [2018]; see People v Carl, 188 AD3d 1304, 1307 [3d Dept 2020], lv denied 37 NY3d 954 [2021]). In response to the People's opposition to defendant being adjudicated a youthful offender, defense counsel indicated that defendant was 18 years old at the time that the robberies were committed and referenced the presentence report which reflects, among other things, that defendant was placed in foster care at the age of two and identified a family history of substance abuse, trauma, domestic violence and mental illness. Defense counsel also cited to defendant's lack of good decision-making as evidenced by his decision to proceed to trial despite the evidence against him. In denying the application for youthful offender status, Supreme Court considered the aforementioned factors and balanced them against defendant's "crime wave" which resulted in him being charged with nine felonies, including the violent crimes against the first and second victims herein. The court also cited defendant's failure to accept responsibility and lack of remorse, as demonstrated by video evidence of defendant and Scott celebrating and laughing after robbing the two victims. Given the foregoing, Supreme Court did not abuse its discretion in denying defendant youthful offender treatment (see People v Carl, 188 AD3d at 1307; People v Moon, 176 AD3d 1265, 1266 [3d Dept 2019], lv denied 34 NY3d 1080 [2019]). However, as to defendant's sentence, we deem it appropriate to take corrective action in the interest of justice and modify the sentence imposed upon the conviction for robbery in the first degree (see CPL 470.15 [6] [b]; People v Kerrick, 206 AD3d 1268, 1271 [3d Dept 2022], lv denied 38 NY3d 1151 [2022]; People v Coleman, 281 AD2d 653, 654 [3d Dept 2001]). That said, the term of imprisonment for the conviction of robbery in the first degree (count 5 of indictment No. 7-8882) should be reduced to 10 years followed by five years of postrelease supervision, which is to run concurrent to the sentence already imposed for robbery in the second degree (count 6 of indictment No. 7-8882) and consecutive to the sentence already imposed on the remaining count of robbery in the second degree (count 8 of indictment No. 7-8882) and concurrent to the aggregate 20-year sentence imposed on defendant's burglary convictions in the companion appeal (count 2 of indictment No. 7-8882 and count 1 of indictment No. 20-9240) (People v Thaxton, ___ AD3d at ___).
Clark, J.P., Aarons and Fisher, JJ., concur.
Ceresia, J. (concurring in part and dissenting in part).
I agree with the majority that defendant's claimed trial errors are without merit and defendant was properly denied youthful offender treatment. However, I respectfully disagree that this case presents as one warranting corrective action in the interest of justice to reduce defendant's sentence[*5].
To begin with, the seriousness of defendant's crimes cannot be overstated. Defendant stands convicted of one count of robbery in the first degree, a class B violent felony (Penal Law § 160.15 [3]), and two counts of robbery in the second degree, a class C violent felony (Penal Law § 160.10 [1]). That said, the mere mention of these crimes — which stemmed from two, separate attacks occurring on July 31, 2018 and August 3, 2018, respectively — does not tell the full story of the violent nature of defendant's conduct.
Regarding the July 2018 incident, a small business owner (hereinafter the first victim) was closing up his convenience store at approximately 2:30 a.m. When he stepped outside through the back door, defendant and codefendant, Jaquan Scott, who had apparently been lying in wait, ambushed him. The two of them grabbed the first victim and defendant, who was positioned behind him, said "kill him, kill him." Scott, who was in front of him, said "kill him, shoot him." Scott proceeded to grab a knife, place it at the first victim's throat and threaten to stab him. Defendant and Scott also began punching him in the "face and everywhere." At one point, they told the first victim that they had a gun and were going to shoot him, although a gun was never observed. Defendant and Scott, still carrying a knife, eventually forced the first victim back into the store, where they stole money from the cash register as well as other money that had been left out of the register, before ultimately fleeing. The first victim, who has two stents and takes a blood thinner, recounted how scared he was and that he stopped resisting defendant and Scott outside and went into the store with them because, in his mind, if they were going to kill him at least it would be captured on a video camera in the store.
As borne out by the August 2018 incident, defendant did not reserve his violence for complete strangers. On that date, defendant and Scott placed multiple telephone calls to another small business owner (hereinafter the second victim). The purpose of these calls was to lure the second victim to a particular location, such that they could then rob her. The second victim had known defendant and Scott through her pastor, and she indicated that they referred to her as "mother" and that they were like children to her. On the various phone calls, defendant and Scott, addressing the second victim as "Ma," told her that a baby had been left with them and the baby was hungry and had no food. They wanted her to come meet them at a certain post office. The second victim, who had been resting and lived about 25 to 30 minutes away, agreed to get up and travel to help them. When she arrived at the post office, defendant and Scott were not there, so she called one of them on the phone. Defendant and Scott then arrived and approached her car. The second victim asked them where the baby was, and they responded "[a]t home." She insisted that one of them return to care for the [*6]baby while she would go with the other one to a store to get food and diapers for the baby. Following further discussion, defendant and Scott led her to a different location, at which point they attacked her. Defendant demanded money from her and then entered her car on the passenger side. When she attempted to make a phone call, defendant grabbed the cell phone out of her hand. Scott approached her open driver side window. After continuing to demand that she give them money, defendant took her wallet from her and began punching her "very bad." As defendant got out of the car and looked through the wallet, Scott continued beating her. The second victim pleaded with them to at least give her driver's license back to her so that she could drive home. In response, defendant laughed and flipped her license on the floor.
In addition to defendant's horrific actions, it should not be overlooked that he has accepted no responsibility for the crimes that he committed, nor has he shown any remorse for his behavior and how it has undoubtedly impacted two innocent people, one of whom he personally knew and saw as a mother figure. Since the time of the jury verdict finding defendant guilty, he has persisted in denying any culpability. In fact, when given the opportunity to speak prior to being sentenced, defendant said not a word about the robberies or the two victims. Further highlighting his clear lack of remorse or any level of concern is the video depicting defendant and Scott minutes after the July 2018 attack. In that video, which can fairly be characterized as chilling, defendant is seen high-fiving Scott and callously laughing and apparently celebrating with him.
Like Supreme Court and the majority, I have genuine sympathy for defendant's upbringing and the many challenges that he must have faced throughout his childhood, all of which should be properly taken into account when determining the appropriate sentence. Indeed, Supreme Court expressly acknowledged this upbringing and — much to its credit — candidly recognized the gravity of the aggregate sentence that it imposed. I part ways with the majority, however, when they conclude that interest of justice power should be utilized to reduce defendant's sentence. A mitigating factor such as defendant's difficult personal background cannot be viewed in a vacuum. Rather, it must be considered within the context of all the circumstances of a particular case, including any aggravating factors which might exist. With that said, while I am mindful that there is no precise formula for determining when to exercise interest of justice authority, it seems clear to me that this is not the case to do so. In my view, the mitigating factors present herein are far outweighed by the aggravating factors — namely, the multiple violent attacks which were premeditated and carried out for the most selfish purposes, along with the complete absence of even the slightest degree of acceptance of responsibility or demonstration [*7]of any remorse. I am hard pressed to justify rewarding defendant with a reduced sentence when he steadfastly refuses to acknowledge the violence that he perpetrated, even in the face of the overwhelming evidence of guilt that was proffered at trial.
For all of the aforementioned reasons, I believe that defendant's sentence should be left undisturbed. In so concluding, I note that the sentence which is now being reduced by the majority was already squarely at the midpoint of the permissible sentencing range.
ORDERED that the judgment is modified, as a matter of discretion in the interest of justice, by reducing the sentence imposed for robbery in the first degree under count 5 of indictment No. 7-8882 to 10 years in prison, with five years of postrelease supervision, and, as so modified, affirmed.

Footnotes

Footnote 1: Scott was convicted after trial, which this Court affirmed on appeal (People v Scott, 219 AD3d 1572 [3d Dept 2023]).

Footnote 2: These charges were counts 5 through 8 of an 8-count indictment (indictment No. 7-8882). Counts 1 through 4 charged four counts of burglary in the second degree stemming from unrelated incidents. Those charges were severed from the robbery charges for trial-related purposes. Defendant was also indicted on one count of burglary in the second degree stemming from another unrelated incident (indictment No. 20-9240). Defendant subsequently pleaded guilty to two counts of burglary in the second degree, specifically count 2 of indictment No. 7-8882 and count 1 of indictment No. 20-9240. Defendant has separately appealed the convictions stemming from the guilty plea in a companion appeal (People v Thaxton, ___ AD3d ___ [3d Dept 2023] [decided herewith]).

Footnote 3: Supreme Court also sentenced defendant in relation to the aforementioned burglary convictions — to an aggregate prison term of 25 years to run concurrent with the instant sentence.

Footnote 4: To the extent defendant is alleging that Supreme Court erred in denying this request as to the other two counts before the jury, defendant did not request that petit larceny be charged as a lesser included offense of these two counts. As such, this argument is unpreserved (see People v Horton, 173 AD3d 1338, 1341 [3d Dept 2019], lv denied 34 NY3d 933 [2019]).